UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Z.J.W., by next friends and parents, TERESA CATOE and JOHN WHEELER; <br><br> and <br><br> A.A.P., by next friend and parent, SUSAN PARK, <br><br>         Plaintiffs, <br><br> v. <br><br> KING GEORGE COUNTY SCHOOL BOARD; DR. JESSE BOYD, in his official capacity as Superintendent of King George County Schools; and DR. CASEY NICE, in his official capacity as Principal of King George Middle School, <br><br><br>         Defendants. | **Case No.** <br><br> **COMPLAINT FOR** <br><br> **DECLARATORY AND** <br><br> **INJUNCTIVE RELIEF** |

Plaintiffs Teresa Catoe and John Wheeler, as next friends of their minor child, Z.J.W., and Susan Park, as next friend of her minor child, A.A.P., by and through their undersigned attorneys, ACLU of Virginia and Potomac Law Group, bring this Complaint against the above-named Defendants, and allege as follows:

**INTRODUCTION**

1. This action challenges the King George County School Board's (the "School Board") unconstitutional and unlawful ban on the formation of a Gay-Straight Alliance ("GSA") at King George Middle School ("KGMS"). KGMS is a public middle school serving students in

1

grades six through eight and offers secondary courses for high school credit, including World History I, Algebra I, Geometry, Spanish, and French. Since September 2025, Defendants have engaged in impermissible viewpoint discrimination by singling out the GSA, a student organization expressing support for LGBTQ+[1] students, while simultaneously permitting other noncurricular groups to meet and even offering to facilitate the formation of new organizations reflecting favored viewpoints.

2. Defendants' actions violate the First Amendment to the United States Constitution and the Equal Access Act, 20 U.S.C. §§ 4071–4074. Plaintiffs seek declaratory and injunctive relief requiring Defendants to permit the GSA to form and operate at KGMS on the same terms as other student groups, as well as nominal damages.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction). Plaintiffs' claims arise under the First and Fourteenth Amendments to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, and the Equal Access Act, 20 U.S.C. §§ 4071–4074.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in King George County, Virginia, which is located within the Eastern District of Virginia.

5. This Court has the authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

---

[1] LGBTQ+ is an umbrella term used to describe people who may identify as: Lesbian, Gay, Bisexual, Transgender, or Queer.

**PARTIES**

6. Plaintiff Teresa Catoe is the mother of Z.J.W. and resides in King George County, Virginia. She brings this action on behalf of her minor child, Z.J.W.

7. Plaintiff John Wheeler is the father of Z.J.W. and resides in King George County, Virginia. He brings this action on behalf of his minor child, Z.J.W.

8. Plaintiff Susan Park is the mother of A.A.P. and resides in King George County, Virginia. She brings this action on behalf of her minor child, A.A.P.

9. Z.J.W. is a thirteen-year-old student currently enrolled at KGMS who initiated the founding of the GSA. Z.J.W. will be an eighth grader at KGMS in the 2026–2027 academic year. Z.J.W. has attended and spoken at multiple School Board meetings in support of the GSA.

10. A.A.P. is a fourteen-year-old student who recently completed his eighth-grade year at KGMS. A.A.P. saw the GSA interest form on Canvas at the beginning of the 2025–2026 school year and was excited to join the student group. A.A.P. has attended and spoken at multiple School Board meetings in support of the GSA. A.A.P. will be starting high school within the King George County school system in the fall of 2026 but continues to advocate for the formation of the KGMS GSA so that other students may benefit from the organization.

11. Defendant King George County School Board (is the governing body of the King George County Schools ("KGCS"). The School Board is responsible for the policies and practices at issue in this case, including the adoption of revised policies IGDA and IGDA-R.2 that restrict

3

noncurricular organizations at the middle school level. KGCS is a recipient of federal funding.[2]

12. Defendant Dr. Jesse Boyd is the Superintendent of KGCS. Superintendent Boyd is sued in his official capacity. He is responsible for the indefinite pause of the GSA's formation and worked with the School Board to propose new policies to make student group formation more difficult and to prevent formation of the GSA.

13. Defendant Dr. Casey Nice is the Principal of KGMS. Principal Nice is sued in his official capacity. Although he initially approved the GSA's formation, he subsequently retracted official support of the GSA in the wake of public backlash and has offered to facilitate the formation of favored organizations while continuing to deny the GSA the ability to form.

## FACTUAL ALLEGATIONS

### A. Formation of the GSA

14. KGMS is a public middle school serving students in grades six through eight and offers courses for high school credit, including World History I, Algebra I, Geometry, Spanish, and French.

15. In August 2025, at the start of the academic year, Z.J.W., then a seventh grader at KGMS, sought to create a new student organization called the GSA.

16. Z.J.W. first approached their[3] homeroom teacher, Mr. David Riley, about sponsoring the GSA. Mr. Riley was supportive of the student group but was unable to serve as its sponsor

---

[2] King George County School Division, 2025 –2026 Budget, https://perma.cc/5CE8-KAY3, https://resources.finalsite.net/images/v1763656752/kgcsk12vaus/nvtsd84w2tqm1epomxrl/Finance25-26Budget.pdf.

[3] The third-person pronouns "they" and "them" are used to refer to Z.J.W. singularly to provide minor plaintiff additional privacy.

due to scheduling constraints. Mr. Riley suggested Z.J.W. ask Becca Boe[4] to sponsor the group.

17. Ms. Boe agreed to sponsor the student group and approached Dr. Nice about the requirements to form a student group. Dr. Nice informed Ms. Boe that he was in favor of the student group's formation and presented the next steps, namely creating a flyer, club constitution, a sample calendar of activities, and interest form to be posted on the school's online learning platform, Canvas.

18. At the time Z.J.W. sought to form the GSA, School Board student organization policy IGDA did not include the requirements for student group formation within KGCS.

19. In mid-September 2025, Ms. Boe sent the completed documents to Dr. Nice, who approved the materials. The GSA constitution stated that the group's mission was to create "a safe, supportive, and inclusive environment for LGBTQ+ students and allies" and "to promote respect, understanding, and equality for all people regardless of sexual orientation, gender identity, or expression."

20. On Monday, September 15, 2025, following approval from Dr. Nice, Ms. Boe sent the flyer and interest form to the school's IT staff, who posted them on Canvas. The middle school's Canvas has a student page with multiple subsections, including a student groups and activities page with information about all the student groups offered.

21. Seventeen middle school students filled out the interest form.

**B. Community Backlash and the "Pause"**

22. On September 16, 2025, after the materials were posted, KGMS parents posted them in a community Facebook group, resulting in instant backlash. Parents and community members

---

[4] Plaintiffs will seek leave to file Ms. Boe's Declaration under pseudonym.

criticized the school for allowing the formation of an LGBTQ+-supportive organization. The post garnered hundreds of comments and reactions. As of July 8, 2026, at least one post is still up and has amassed 43 reactions and 580 comments.

23. In the midst of this backlash, Ms. Boe was doxed in a Facebook group called "King George Uncensored," where her photos and email address were posted, and community members accused her of "grooming" children and called for her to be fired. Parents also sent hostile emails to Ms. Boe's work email address.

24. In response to the backlash, parents sent threatening emails to school officials. One parent wrote to Dr. Boyd on September 16, 2025, accusing school personnel of engaging in "illegal" communications with minors about "illicit" matters and threatening to press charges against "whoever the adult counselor providing 'education and advice' may be."

25. In response to this community reaction, the School Board, Dr. Boyd, and Dr. Nice put formation of the GSA "on pause" to allow for internal discussions by the School Board.

26. On September 18, 2025, Dr. Nice sent an email to KGMS families stating, "we have made the decision to pause the start of the proposed-student-led GSA club until further notice." Dr. Nice went on to state that the proposal to start a GSA "has led to division within our community." The GSA materials were removed from Canvas on the same day.

27. Dr. Boyd explicitly stated at the September 22, 2025, School Board meeting that they were temporarily pausing the student group to discuss the situation internally.

28. At almost every School Board meeting in the months since the pause, there has been public comment regarding the GSA and the KGMS student group policies.

29. At the October 6, 2025, School Board meeting, now-School Board member Rachel Scott—who was already running for the position at the time—gave public comment opposing the

GSA, stating she did not believe it was an "age appropriate" group for the middle school. Another speaker stated that the GSA would "not be a safe space, but a dangerous place."

30. At the same meeting, Plaintiff John Wheeler gave public comment opposing the proposed policy to prohibit student-led, noncurricular groups at KGMS, stating that he believed students benefit from being able to create spaces to explore their interests together.

**C. Unconstitutional Policy Changes**

31. At the October 6, 2025, School Board meeting, the School Board announced it would be updating school policies regarding student groups. The policy changes proposed sought to address the existing "less formal process" for student group formation. The October 6, 2025, proposed policy allocated initial club formation approval to school principals, with the Superintendent serving as a final decisionmaker for any "appealed" group formation decision. The October 6, 2025, proposed policy also required that a group seeking approval submit a list of at least ten students who wished to serve as members.

32. At the October 6, 2025, School Board meeting, Board members raised concerns about the "age-appropriateness" of having a GSA at KGMS, and Dr. Boyd stated that he believed there were "red flags" in creating a GSA.

33. On October 20, 2025, during the public comment portion of a School Board meeting, KGMS educator David Riley stated that Defendants' indefinite "pause" of the GSA was unconstitutional and violated federal law.

34. On October 22, 2025, counsel for Plaintiffs sent the School Board an advocacy letter detailing the illegality of their actions and providing a legal analysis of the Equal Access Act and First Amendment requirements. The School Board never responded to this letter.

35. On November 5, 2025, KGMS educator David Riley emailed the School Board informing them that the numerical size requirement was violative of the Equal Access Act. Following these communications, the School Board reversed course on this iteration of the KGMS student group policy.

36. Prior to these communications, School Board members and KGCS administrators had, at multiple School Board meetings, affirmed their support of student groups at KGMS. It was only after Plaintiffs' counsel and Mr. Riley raised the illegality of the proposed policy that Defendants pivoted to limiting noncurricular groups to King George High School, despite their earlier support for noncurricular groups at the middle school level.

37. On November 17, 2025, the School Board adopted a revised version of the policy stating: "King George High School students may organize and conduct meetings of non-curriculum-related groups." Prior policies did not limit non-curriculum-related groups to high school students.

38. Prior to revising policy IGDA, the School Board explicitly discussed the GSA controversy as the reason for the policy changes. School Board members stated they wanted to "protect" principals from making approval decisions. One board member asserted that "responsibility falls ultimately on the School Board and the Superintendent," indicating the Board sought to centralize control over student group approvals in response to the GSA.

39. The School Board simultaneously adopted a new policy, IGDA-R.2, detailing the requirements for noncurricular organizations, which, consistent with revised policy IGDA, only applied at the high school level.

40. These policies have been used by the School Board to block formation of the GSA by facially disallowing all noncurricular groups at the middle school level.

**D. Evidence of Pretext and Viewpoint Discrimination**

41. Despite the School Board's attempt to cloak their actions as viewpoint neutral, the differential treatment between the GSA and other noncurricular groups reveals their true intentions.

42. In or around early November 2025, Dr. Nice mentioned the idea of forming a "PRISM Club" instead of the GSA to Mr. Riley. Dr. Nice said he had seen PRISMs at other schools and, like a GSA, these groups promote tolerance and acceptance of LGBTQ+ people but don't include references to those identities in their name. Dr. Nice said he thought a PRISM might be more palatable to the School Board.

43. On September 18, 2025, Dr. Nice had also proposed this idea directly to Dr. Boyd.

44. Shortly thereafter, Dr. Boyd spoke with Mr. Riley and expressed that the School Board would likely never allow KGMS students to form a group that referenced LGBTQ+ issues in its name or mission. Mr. Riley mentioned Dr. Nice's proposal of a "PRISM Club," but Dr. Boyd stated that while it would be more "palatable" to the community, it was still probably too controversial because it was connected to LGBTQ+ topics. Dr. Boyd suggested that if the students instead proposed a group focused on tolerating all people it would likely be approved by the Board.

45. Mr. Riley relayed this information to the students and their families. The students were not interested in proceeding with an organization that was the same in nature but different in name; the students believed in the importance of explicit recognition and support of LGBTQ+ students at KGMS.

46. In an email to Ms. Park on January 22, 2026, Dr. Nice wrote that the School Board may be receptive to allowing "non-academic" groups at KGMS if the GSA were to be framed as a

9

"Kindness Club" rather than a GSA. Dr. Nice and Dr. Boyd also relayed this message directly to Z.J.W. and A.A.P., making clear that the GSA's viewpoint—its explicit affirmation of LGBTQ+ identity—was the obstacle to its approval.

47. In a March 2026 meeting with Ms. Catoe and Ms. Park, Dr. Boyd stated that the GSA pertained to a "very divisive topic," suggesting that the School Board would be more likely to accept a "Safe Space Group."

48. On multiple occasions, Dr. Boyd told teachers, parents, and students involved in seeking to form the GSA that the School Board would not allow a GSA to form at KGMS.

49. In February 2026, Plaintiff John Wheeler met with Dr. Boyd to discuss Z.J.W.'s inability to form a GSA. Dr. Boyd asked whether Mr. Wheeler would support the creation of a GSA at an elementary school, implying that the student group was age inappropriate. Despite Mr. Wheeler's multiple questions about how the GSA might be allowed to go forward, Dr. Boyd would not articulate any way the GSA would be permitted.

**E. Differential Treatment of Other Student Groups**

50. At the time the IGDA policy was revised, KGMS listed three student groups on its Canvas: a Yearbook Club, a Robotics Team, and a Book of the Month Club, all of which continue to exist to date. KGMS also allows the existence of a Beta Club, an Outdoor Club, and a Superintendent's Student Advisory Committee. These are noncurricular student groups because KGMS does not offer yearbook-specific courses, robotics courses, or outdoor education courses.

51. Other existing organizations at KGMS have been deemed as "curricular" regardless of their actual content and substance.

52. During the 2025–2026 academic year, a new organization—the Fellowship of Christian Athletes ("FCA")—has also attempted to form concurrent with the indefinite "pause" of the GSA. Dr. Nice acknowledged that the FCA does not meet the requirements of the new IGDA policy.

53. Despite acknowledging that the FCA does not comply with the new policy, Dr. Nice explored the possibility of amending the curriculum of a leadership class to make the FCA curricular, which would allow it to form under the revised policy.

54. No such accommodation has been offered to the GSA.

55. The GSA has been denied the ability to form and continues to be denied to date.

56. Student groups continue to operate at King George County elementary schools. In January 2026, Sealston Elementary School opened registration for Spring 2026 student groups including a Crochet Club, Card and Board Game Club, STEM Club, Volleyball Club, Chorus, and Book Club. These student groups meet during noninstructional time. The school division's decision to permit student groups at the elementary level while prohibiting the GSA at the middle school level further demonstrates that the stated justification for eliminating noncurricular groups is pretextual and selectively enforced.

**F. Harm to Plaintiffs**

57. Z.J.W. has faced consistent bullying at school that makes it difficult to attend school at times. Z.J.W. learned about GSAs through research at home and believed that such a student group at KGMS could help all students feel less alone.

58. Z.J.W. followed all of KGMS's rules to form the GSA. Z.J.W. is frustrated that other student groups continue to meet while the GSA is being singled out and believes that LGBTQ+

student organizations are being targeted such that had Z.J.W. proposed another type of group, it would have been allowed to form.

59. Plaintiff John Wheeler wanted Z.J.W. to participate in the GSA and planned to give parental permission for Z.J.W.'s involvement. Z.J.W. was denied that opportunity by the Defendants' targeting of LGBTQ+-affirming speech and organizations.

60. Z.J.W. continues to ask their parents about the status of the GSA and wants to continue advocating for all KGMS students who would benefit from the GSA.

61. A.A.P. was excited to learn about the GSA and filled out the interest form to join the group at the beginning of his eighth-grade year. Shortly after, A.A.P. learned that the group had been put on pause. A.A.P. was upset and felt the pause was not fair, believing students had the right to meet and have a safe space to talk with other students.

62. A.A.P. faced difficulties in middle school, including bullying based on his actual or perceived membership in the LGBTQ+ community. A.A.P. sometimes left school because of how hard it could be and how other students treated him.

63. A.A.P. asked his mother, Susan Park, if he could speak at School Board meetings to tell the Board why the GSA was important. A.A.P. has spoken at multiple School Board meetings, including at least one meeting after which he left crying because of anti-LGBTQ+ comments made during public comment. Plaintiff Susan Park wanted A.A.P. to participate in the GSA and planned to give parental permission for his involvement. A.A.P. was denied that opportunity by the Defendants' targeting of LGBTQ+-affirming speech and organizations.

64. A.A.P. and Z.J.W. became friends through their shared advocacy for the GSA. A.A.P. believes the student group has the right to exist as a GSA and should not be forced to adopt a different name because of community hostility to affirming LGBTQ+ identity. A.A.P. knows

12

the only reason students are not allowed to have this group is because of the GSA's viewpoint and that other student groups are not treated in the same way.

65. A.A.P. and Z.J.W. have rejected the proposed "Kindness Club" or "Safe Space Club" offered by Dr. Boyd and Dr. Nice. A.A.P. and Z.J.W. do not feel an alternative student group would address the underlying reasoning for wanting to create a GSA.

66. Even though A.A.P. is beginning high school, he continues to believe it is important for other students to have the opportunity to participate in a GSA at KGMS because of his own experiences and difficulty at KGMS.

67. Plaintiffs have suffered and Plaintiffs John Wheeler, Teresa Catoe, and Z.J.W. will continue to suffer irreparable injury as a result of Defendants' refusal to permit Plaintiffs to access the forum for noncurricular student groups and to operate the GSA at the school. Through this exclusion, Plaintiffs are deprived of the many benefits of participating in the forum and the opportunity to create a safe space for LGBTQ+ students and their allies.

## COUNT I: VIOLATION OF THE FIRST AMENDMENT

### (Limited Public Forum– 42 U.S.C. § 1983)

68. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

69. KGCS has created a limited public forum by permitting private speech by student organizations.

70. The First Amendment to the United States Constitution, applicable to state actors through the Fourteenth Amendment, prohibits the government from engaging in viewpoint discrimination or restricting private speech in ways that are unreasonable in light of the purpose of the forum.

71. Defendants have treated the KGMS GSA differently, and worse, than other student organizations because of the GSA's viewpoint, constituting impermissible viewpoint discrimination in violation of the First Amendment.

72. Defendants' denial of the GSA's request to form, and the subsequent pretextual policy changes, have been motivated by a desire to suppress a particular viewpoint—namely, affirmation and support for LGBTQ+ identity, constituting illegal viewpoint discrimination under the First Amendment.

73. Defendants' restrictions on student organizations are unreasonable in light of the purpose served by the limited public forum established by KGCS.

74. Defendants' actions have violated Z.J.W. and A.A.P.'s rights and continue to violate Z.J.W.'s rights under the First Amendment.

## COUNT II: VIOLATION OF THE EQUAL ACCESS ACT
## (20 U.S.C. §§ 4071–4074)

75. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

76. The Equal Access Act ("EAA") requires that similarly situated noncurricular groups are afforded the same access to public secondary school facilities. 20 U.S.C. §§ 4071–4074.

77. The EAA applies to any public secondary school that receives federal funds and creates a limited public forum by allowing one or more noncurricular student groups to meet on its premises during noninstructional time. Any school that meets these criteria is forbidden from preventing access or denying fair opportunity to, or discriminating against students seeking to hold meetings on school grounds.

78. The EAA defines "secondary school" as any "public school which provides secondary education as determined by State law." *Id.* § 4072(1).

14

79. Virginia law defines "secondary" to include middle school. *See* Va. Code Ann. § 22.1-1 (2024) (defining terms "elementary and secondary" and "elementary or secondary" to include elementary, middle, and high school grades).

80. A middle school offering high school level courses provides "secondary education" within the meaning of the EAA. *See Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cnty.*, 842 F.3d 1324, 1331 (11th Cir. 2016).

81. KGMS has created a limited open forum by permitting multiple noncurricular student groups—including a Yearbook Club, Robotics Team, Book of the Month Club, Beta Club, Superintendent's Student Advisory Committee, and Outdoor Club—to meet on its premises during noninstructional time.

82. KGMS has explicitly committed to providing an environment where "every student feels safe, supported, and welcome," yet has singled out the GSA—an organization designed precisely to fulfill that mission for LGBTQ+ students—for exclusion based solely on its viewpoint.

83. Even if a school allows only one noncurriculum-related student group to meet, the EAA's obligations are triggered, and the school may not deny other student groups equal access on the basis of the content of their speech.

84. By denying the GSA the ability to form while permitting other noncurricular groups to meet, Defendants have denied equal access to students seeking to form a GSA on the basis of the content of their speech in violation of the EAA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

15

A. Declare that Defendants' actions in denying the formation of the GSA at KGMS violate the First Amendment to the United States Constitution;

B. Declare that Defendants' actions in denying the formation of the GSA at KGMS violate the Equal Access Act, 20 U.S.C. §§ 4071–4074;

C. Enter a preliminary and permanent injunction requiring Defendants to permit the GSA to form and operate at KGMS on the same terms and conditions applicable to other student organizations;

D. Enter a preliminary and permanent injunction prohibiting Defendants from enforcing policies IGDA and IGDA-R.2 to the extent they discriminate against the GSA or other student organizations on the basis of viewpoint or impose unreasonable restrictions;

E. Enter a preliminary and permanent injunction prohibiting Defendants from taking retaliatory action against Plaintiffs for bringing this lawsuit or against the GSA's faculty advisor and other involved faculty and staff for their support of the student group;

F. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

G. Award Plaintiffs nominal damages of $1;

F. Grant such other and further relief as the Court deems just and proper.


Dated: August 4, 2026                                Respectfully Submitted,


                                                     /s/ Mary Rohmiller
                                                     Mary Rohmiller VSB #68595
                                                     Alice W. Yao
                                                     *(pro hac vice application forthcoming)*
                                                     Dylan Nicole de Kervor
                                                     *(pro hac vice application forthcoming)*
                                                     POTOMAC LAW GROUP, PLLC
                                                     1717 Pennsylvania Avenue, NW
                                                     Suite 1025

Washington, DC 20006
mrohmiller@potomaclaw.com
ayao@potomaclaw.com
ddekervor@potomaclaw.com


Wyatt Rolla, VSB #85625
Julia Kahn VSB #101714
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA
P.O. Box 26464
Richmond, VA 23261
Tel: (804) 491-8584
wrolla@acluva.org
jkahn@acluva.org


*Counsel for Plaintiffs*

17